# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMERA ROTHSCHILD ESQ., <br> *as Bankruptcy Trustee In re Gura Global Logistics, LLC*, *et al.*, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | Civil Action No. 15-1072 |
| v. | ) <br> ) | Judge Cathy Bissoon |
| LANCER INSURANCE COMPANY, <br> *et al.*, | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## ORDER

For the reasons that follow, Plaintiffs' Motion (Doc. 5) to remand will be granted, and this case will be remanded to state court for want of subject matter jurisdiction.

The Court writes only for the benefit of the parties and their counsel. Defendant's Notice of Removal posits three theories regarding subject matter jurisdiction: federal question, based on the MCS-90 endorsement affixed to the insurance policy in question; diversity jurisdiction, based on Defendant's assertion that Plaintiffs fraudulently joined non-diverse parties; and diversity of citizenship, even in the absence of fraudulent joinder. Defendant has not carried its burden under any of these theories.

As to the MCS-90 endorsement, none of the legal decisions cited by Defendant stand for the proposition that a state case can be removed to federal court, by way of federal-question, based on the presence of an MCS-90 endorsement. *See* decisions cited in Def.'s Opp'n Br. (Doc. 9) at 4-14, including: Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 434 n.1 (3d Cir. 2006) (subject matter jurisdiction founded on diversity of citizenship);

Tri-Nat'l, Inc. v. Yelder, 781 F.3d 408, 411 (8th Cir. 2015) (same); Canal Ins. Co. v. Coleman, 625 F.3d 244 (5th Cir. 2010) *and* compl. in Canal Ins. Co. v. P.S. Transport, Inc., *et al.*, Civil Action No. 3:09-24-SA-SAA (Mar. 9, 2009) (claiming jurisdiction under diversity statute); Canal Ins. Co. v. Paul Cox Trucking, 2006 WL 2828755, *2-4 (M.D. Pa. Oct. 2, 2006) (considering federal nature of MCS-90 endorsement within context of *Brillhart*-abstention based on pendency of collateral state proceedings); *cf. also* Carolina Cas. Ins. Co. v. Yeates, 584 F.3d 868, 870-71 (10th Cir. 2009) (interpreting MCS-90 endorsement under federal law, in case originally filed in federal court, but having no reason to address issue of subject matter jurisdiction).[1]

Defendant's dearth of supportive authority speaks volumes through its silence, and this Court's independent research has failed to uncover a single federal decision holding that removal is warranted under the circumstances presented. To the contrary, those courts to have spoken have reached the opposite conclusion. Although Plaintiffs are correct that the decision in McCloy v. Larew[2] directly supports their position, the explanations in Atlantic Casualty v. United Tours are, in this Court's mind, even clearer. *Id.*, 2013 WL 2389887 (E.D. Va. May 30, 2013). As that court stated:

---

[1] This Court's extensive, independent review of the law has identified only two cases, Yeates and Real Legacy Assur. Co. v. Santori Trucking, Inc., 560 F. Supp.2d 143 (D. P.R. 2008), in which plaintiffs originally filed suit in federal court, claiming federal-question jurisdiction based on the MCS-90 endorsement. Critically, in neither of these cases was the issue of subject matter jurisdiction raised by the parties or the court, and, most likely, the jurisdictional analyses herein simply "flew under the radar." What this Court can be sure of, however, is that those decisions should *not* be read to necessarily approve an exercise of subject matter jurisdiction, given the cases' failure to speak at all regarding matters-jurisdictional. *Cf.* discussion *supra*, regarding Atlantic Casualty (a case dismissing materially similar claims, originally brought in federal court, for want of subject matter jurisdiction).

[2] *Id.*, 2013 WL 1962314 (N.D. W.Va. May 10, 2013).

Title 28 U.S.C. § 1331 vests in federal district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. . . . There are two ways in which cases arise under federal law within the meaning of § 1331. The vast majority of cases brought under . . . general federal-question jurisdiction . . . are those in which federal law creates the cause of action. . . . [Also, i]n certain instances, suits to enforce contracts contemplated by federal statutes may set forth federal claims and . . . private parties . . . may sue in federal court to enforce contractual rights created by federal statutes. . . .

Alternatively, cases may arise under federal law where the vindication of a right under state law necessarily turns on some construction of federal law. . . . However, <u>the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction</u>. To find that the question of federal law is sufficiently substantial to confer jurisdiction, the district court must determine that the state-law claim <u>necessarily</u> raises a stated federal issue, <u>actually disputed and substantial</u>, which a federal forum may entertain <u>without disturbing any congressionally approved balance of federal and state judicial responsibilities</u>.

*Id.* at *2 (citation to quoted sources, internal quotations and alterations omitted; emphasis added).[3]

The <u>Atlantic Casualty</u> Court found, correctly, that the MCS-90 endorsement might -- at best -- be eligible for *Grable* jurisdiction, and then went on to explain why it did not qualify:

[I]n the immediate case, the [c]ourt must construe the general liability provision of the policy before reaching the supplemental terms of the MCS-90B Endorsement.[4] This distinction is critical because contracts, including insurance policies, are governed by state law, and . . . [q]uestions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made. . . .

---

[3] The above-emphasized language is a quotation from <u>Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308 (2005), the most-recent significant Supreme Court decision on the matter. The *Grable* exception is a "narrow and unusual" subset of federal-question jurisdiction. <u>Freedom from Religion Found. v. Morris Cty. Bd. of Chosen Freeholders</u>, 2016 WL 1070594, *1 (D. N.J. Mar. 18, 2016) (citation to quoted source omitted); *accord* <u>MHA LLC v. HealthFirst, Inc.</u>, 2015 WL 7253669, *1 (3d Cir. Nov. 17, 2015).

[4] Although <u>Atlantic Casualty</u> addressed endorsement MCS-90<u>B</u>, regarding buses, this distinction is immaterial to the relevant legal analyses. *Id.* at *3 (explaining same).

3

> Federal law governs the interpretation of the federally mandated terms in the MCS-90 Endorsement, but the mere presence of a federal element is not enough . . . . Here, the endorsement is not triggered unless coverage is lacking under the liability provision of the policy. Thus, the Court may not even need to interpret the MCS-90 Endorsement to dispose of the case. Given that the Court may not reach the secondary issue of interpreting the MCS-90 Endorsement, its inclusion in the [c]omplaint is not essential to the claim and does not support the exercise of federal-question jurisdiction.
>
> As well, it is not apparent that the claimed federal issue constitutes a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. . . . At its core, this case is about the interpretation of an insurance policy -- an enterprise generally reserved for state courts. It just so happens that a supplement to the policy at issue is predicated on federal law. The MCS-90 Endorsement, however, does not present a challenging or unique issue of construction requiring the attention of a federal court. And, unlike *Grable*, this case does not present a pure issue of law . . . that could be settled once and for all and thereafter would govern numerous . . . cases. . . .
>
> Finally, the presence of federal law in a case does not preclude a state court from disposing of the case, as state courts are competent to apply federal law, to the extent that it is relevant, . . . and have done so when interpreting the MCS-90 Endorsement . . . . In short, it takes more than a federal element to open the [']arising under['] door, . . . and this case does not fit into [*Grable's*] small category.

*Id.* at *4-5.

The issues in Atlantic Casualty are materially indistinguishable from those presented here, and the decision is in accord with every decision (the undersigned has been able to identify, at least) to meaningfully address the issue. *Accord, e.g.*, McCloy, 2013 WL 1962314 at *3-6 (remanding case, removed to federal court on same theory, based on materially similar analyses); Carlson v. Am. Int'l Group, Inc., 2012 WL 1202193 (W.D.N.Y. Apr. 10, 2012) (same). Accordingly, and in the clear absence of contrary, binding authority, the Court hereby adopts the reasoning in Atlantic Casualty, McCloy and Carlson, and holds that *Grable* jurisdiction is

4

unavailable.[5]  Indeed, the Carlson opinion's reassurances notwithstanding, this Court believes that a grant of *Grable* jurisdiction, here, would send the wrong message regarding the utility of engaging in "creative" removal arguments and practices.  *Cf.*, Carlson at *10 (quoting passage in *Grable*, recognizing that exception should be read narrowly so as not to open the door to "a horde of original filings and removal cases raising . . . state claims with embedded federal issues").

Defendant next claims jurisdiction based on its contention that Defendants Gurpreet Rangru, Gurjeet Rangru and PA Transport, LLC ("the Rangru-Defendants") were fraudulently joined in the state action.  As to fraudulent joinder, Defendant carries a "heavy burden" of persuasion; removability is determined by reference to Plaintiffs' initial pleading in state court, with all doubts resolved in favor of remand; Plaintiffs' motives are "irrelevant"; and removal will be upheld only if "there is no reasonable basis in fact or colorable ground

---

[5] Defendant's efforts to distinguish McCloy, *see* Doc. 9 at 7-9, are unconvincing.  Defendant emphasizes that, in McCloy, the plaintiff did "not explicitly seek a declaration of coverage under the MCS-90."  *See id.*  Even assuming this to be relevant, which the Court believes it is not, the party invoking federal jurisdiction in Atlantic Casualty *did* seek such a declaration, and the result was the same.  *See* compl. in Atlantic Cas. Inc. Co. v. United Tours, Inc., *et al.*, Civil Action No. 12-680-HEH (Sept. 21, 2012) at ¶ 22.  Nor does the Court think it significant that Count III of Plaintiffs' complaint, addressing the MCS-90 endorsement, is labeled as being between the McConnell-Plaintiffs and Defendant, only (as opposed to the "coverage" counts, which are labeled as being between Guru's Bankruptcy Trustee and Defendant).  The alignment-of-interest between the Bankruptcy Trustee and the McConnells, the estate's largest creditor, is clear from the face of the complaint.  More importantly, the observations in Atlantic Casualty and McCloy regarding the secondary/alternative-nature of a putative recovery under the MCS-90 endorsement apply here with equal force.  *Compare* Pls.' Br. (Doc. 5) at 17 (highlighting same) *with* Def.'s Opp'n Br. (Doc. 9) at 11 (relying favorably on Yeates, a case expressly holding that "the MCS-90 endorsement only applies where the underlying insurance policy to which the endorsement is attached does not provide coverage, and . . . the motor carrier's insurance coverage is either not sufficient to satisfy the federally-prescribed minimum levels . . . or is non-existent") (emphasis added); *cf. also* McCloy at *5 ("recovery under the [insurance] policy and the MCS-90 is mutually exclusive," and, "[t]hus, coverage under the MCS-90 is but one theory of relief pleaded," in the alternative, thereby defeating the claimed-existence of "a necessary federal question").

5

supporting the claim against the joined defendant, or no real intention in good faith to prosecute." Sunbeam Prods., Inc. v. Liberty Mut. Ins. Co., 2013 WL 6079207, *1-2 (W.D. Pa. Nov. 19, 2013) (citations to binding authority omitted, emphasis in original). "[A]ll contested issues of substantive fact" are construed against removal, the Court "must resolve any uncertainties as to the current state of controlling substantive law" in Plaintiffs' favor, and, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must . . . remand the case to state court." Id. at *2 (emphasis added). Indeed, the Court of Appeals for the Third Circuit has made clear that an application of even the Rule 12(b)(6) standards "is more searching than [is] permissible" under the fraudulent-joinder inquiry. Id. at *3.

Plaintiffs' state court pleadings easily withstand scrutiny under the aforementioned standards. The Rangrus, who were principals of Defendant's insured, are charged with flagrantly conveying the insured's assets, and creating the successor-company PA Transport, with sole and obvious intent of avoiding the $5 million-plus judgment entered against the insured in state court. Plaintiffs' successor-in-liability and alter-ego theories are a far cry from the "wholly insubstantial and frivolous" claims giving rise to a meritorious claim of fraudulent joinder. Furthermore, Plaintiffs have made sufficient allegations of interconnectedness, as between the claims against Defendant and the claims against the Rangru-Defendants, to satisfy even the "fraudulent misjoinder" theory applied by some courts. Compare, e.g., compl. at ¶¶ 3-4 & 55-57 (alleging that Defendant's "gratuitous defense" of underlying state court action, which resulted in $5 million-plus judgment, caused Rangrus to engage in collection-dodging behavior, and that Defendant officiously interfered with the Rangrus' anticipated assignment of Guru's bad faith claim to the McConnells, which, had it been made, would have allowed the Rangrus to continue

6

operating their trucking business without having to fraudulently dissipate Guru's assets) with Saviour v. Stavropoulos, 2015 WL 6810856, at *6 (E.D. Pa. Nov. 5, 2015) (highlighting that doctrine of fraudulent misjoinder, which examines state-law rules regarding permissive joinder, has not been recognized by Third Circuit Court, and that district courts are divided regarding its applicability). Even assuming the fraudulent misjoinder doctrine applies, Defendant's removal is no more appropriate. *See* discussion immediately *supra*; *see also* Sunbeam at *1-3 (any and all doubts regarding facts and law must be construed in favor of remand).

Last, Defendant argues that, even assuming the Rangru-Defendants were not fraudulently joined, there remains a diversity of citizenship because those Defendants now are citizens of Texas. Plaintiffs' state court complaint explicitly anticipates this assertion, and they take pains to explain that the Rangrus' recent relocation to Texas cannot defeat their true locus of citizenship, Pennsylvania. *See* compl. at ¶¶ 11-13 (alleging in detail Rangru-Defendants' extensive contacts with Pennsylvania) *and id.* at ¶ 21 ("Now, despite still owning and frequently returning to their 2279 Leesburg Grove City Road, Mercer, PA 16137 home, the Rangrus claim to have 'moved' to Texas. However, this recent maneuver to set up shop in Texas in order to escape liability for the judgment against Guru cannot . . . wipe away the Rangrus' well-documented, continuous and on-going business, property and legal [interests] in the Commonwealth of Pennsylvania.").

Aside from carrying a strong ring of truthfulness, the allegations in support of the Rangrus-Defendants' Pennsylvania citizenship must, under the law, be construed in Plaintiffs' favor. *See* discussions *supra*. On the other side of the ledger, Defendant offers no evidence

7

demonstrating that the Rangru-Defendants are citizens of Texas. The burdens regarding removal are borne by Defendant, they are heavy, and they have not been satisfied.[6]

For all of the reasons stated above, Plaintiffs' Motion to Remand (**Doc. 5**) is **GRANTED**, and this case shall be **REMANDED FORTHWITH** to the Court of Common Pleas of Lawrence County, Pennsylvania.

IT IS SO ORDERED.


March 30, 2016                                             s\Cathy Bissoon
                                                           Cathy Bissoon
                                                           United States District Judge

cc (via ECF email notification):

All Counsel of Record

---

[6] Although unnecessary to its ultimate ruling, the Court also believes that Defendant is subject to, and has failed to overcome, a rebuttable presumption that the Rangru-Defendants remain domiciled in Pennsylvania. See McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286-87 (3d Cir. 2006) ("[a] domicile once acquired is presumed to continue until it is shown to have been changed") (citation to quoted source omitted). That the Rangrus, at a minimum, once were established-domiciliaries of Pennsylvania seems beyond fair-minded debate. Indeed, a document filed in Bankruptcy Court on February 8, 2015 still listed a residential address for Mr. Rangru in Grove City, Pennsylvania. See In re Guru Global Logistic, LLC, Case No. 15-10096-TPA (W.D. Pa. Bankr., pet. filed Jan. 28, 2015) at Doc. 14. Given the presumption in favor of an established domicile, Defendant's failure-of-burden is two fold. McCann at 288-89 ("[w]hen the party claiming a new domicile is the proponent of federal jurisdiction," it bears "both . . . the burden of production regarding domicile[,] and the burden of persuasion regarding federal jurisdiction"). These deficiencies only are amplified by Defendant's burden as the removing party.

8